89 F.3d 824
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Donald A. GIANQUITTO, Defendant, Appellant.
 No. 96-1408.
 United States Court of Appeals, First Circuit.
 July 10, 1996.
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS. [Hon. Patti B. Saris, U.S. District Judge]
 Thomas J. Butters, Sarah C. Dooley, and Butters, Brazilian & Small, on brief for appellant.
 Donald K. Stern, United States Attorney, and Geoffrey E. Hobart, Assistant United States Attorney, on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before SELYA, CYR and BOUDIN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Gianquitto appeals from a district court order imposing pre-trial detention.
 
 
 2
 Appellant and seven others were charged in a complaint with conspiracy to possess and distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846. The government filed motions in the district court for pretrial detention under 18 U.S.C. § 3142(f). A magistrate judge held a detention hearing and issued orders which, as to appellant, set bail at $300,000, and imposed additional conditions including a curfew and the surrender by appellant of his pilot's license and his physical control over two airplanes. The order was stayed while the government sought a de novo review of the magistrate's orders.
 
 
 3
 The district court conducted a joint three-day de novo hearing on the government's motion for detention of appellant and two other defendants, as well as a motion for reconsideration of an order detaining a fourth defendant, Venuti. On January 24, 1996, the court entered an order which, inter alia, denied bail to appellant and ordered his detention pending trial.[1]
 
 
 4
 At the hearing the government introduced evidence gathered in a lengthy undercover investigation of appellant's involvement in a large scale drug trafficking operation. A DEA agent's testimony and affidavit reciting the results of wire and visual surveillance, declarations by a co-conspirator, information from informants, and items found in a search of appellant's home, all tended to identify him as a central figure in the conspiracy. In addition, close surveillance provided strong evidence that in multiple transactions appellant had supplied cocaine to co-defendant Venuti who, in turn, distributed the drug to a confidential informant.
 
 
 5
 In the search of appellant's home, the government found $300,000 in gold krugerrands stored in an ammunition can; $19,000 in cash in a brown paper bag; a scale useful in weighing drugs; and documents identified as a drug ledger. The house also contained 148 legally-registered firearms, including an Uzi semiautomatic machine gun; several cases of ammunition; 150 sticks of dynamite; 16 smoke grenades; books about manufacturing bombs and explosive devices; a Nazi flag, and two human skulls. Evidence was introduced, too, that appellant held a pilot's license; had travelled extensively outside the United States; owned at least three aircraft, one of which was registered to someone else and was fitted for long distance flight; and had recently attempted to import a military-style airplane.
 
 
 6
 Appellant stipulated at the hearing that the government had presented probable cause to believe that he had committed offenses for which he might receive a maximum penalty of ten years or more as prescribed in the Controlled Substances Act, 21 U.S.C. § 801 et seq.[2] As a result, a rebuttable presumption arose that no "condition or combination of conditions will reasonably assure" his appearance and "the safety of any other person and the community." 18 U.S.C. § 3142(e)(f).
 
 
 7
 In rebuttal, appellant presented evidence of strong family ties and long time residence in the community, his ownership of a construction business in another town, his legal ownership of the items found in his home, the inoperability of at least two of the aircraft, and the lawfulness of his attempt to import the military aircraft. He argued that he had legitimate uses for the weapons as a firearms collector and competitive shooter, and a use for the explosive devices in his construction business.
 
 
 8
 After substantial consideration of the evidence on both sides, and a weighing of the factors enumerated in 18 U.S.C. § 3142(g), the district court concluded that no condition or combination of conditions would reasonably assure appellant's appearance and the safety of the community. Observing strong proof that appellant had trafficked in cocaine from his home and could face a mandatory minimum term of ten years' imprisonment, the court was persuaded by a preponderance of the evidence that appellant had an incentive to flee, possessed the resources to do so, and had not been "candid" about his access to airplanes. As to dangerousness, the court found clear and convincing proof in the presence of appellant's weapons at the site of his drug trafficking activity, his presumptive financial incentive to continue in drug trafficking, and his "dubious" explanations for the presence of the Uzi and explosives in his home.
 
 
 9
 Cognizant of the district court's superior ability to marshall and evaluate the facts, in pretrial bail cases we undertake an "intermediate level of scrutiny--more rigorous than the abuse-of-discretion or clear-error standards, but stopping short of plenary or de novo review." United States v. Tortora, 922 F.2d 880, 883 (1st Cir.1990); see also United States v. O'Brien, 895 F.2d 810, 814 (1st Cir.1990) (where the decisional scales are evenly balanced, the trial court's determination should stand). While appellant urges us to resift and reweigh each item of testimony and evidence, in bail cases we necessarily cede deference to the district court's first hand determination of fact-bound issues. After an independent review of the record, we are convinced that the balance struck by the district court should stand, and affirm substantially for the reasons stated in the court's thoughtful opinion.
 
 
 10
 We reject appellant's other arguments for the following reasons:
 
 
 11
 (1) Despite his stipulation in the district court, appellant argues here that there was insufficient evidence to trigger the presumption in 18 U.S.C. § 3142(e)(f). In the alternative, he urges that the presumption was rebutted.
 
 
 12
 As appellant views the evidence, it "directly implicates" him in only two cocaine transactions, involving a total of only 717.1 grams of cocaine. To arrive at this figure, he disputes the court's conclusion that there was "extremely strong evidence" that in "seven transactions" he had "personally trafficked in over two kilograms of cocaine." He also challenges, as violative of his Sixth Amendment rights, the court's reliance on testimony that tied him to a conspiracy involving over five kilograms of cocaine, the amount which may lead to a minimum sentence of ten years' imprisonment.
 
 
 13
 However, even if the record supported this argument--which it does not--it would not render the presumption inapplicable. The presumption is triggered solely by probable cause to believe that the defendant has committed a crime for which a maximum penalty of ten years or more is prescribed in the controlled substances statute. United States v. Moss, 887 F.2d 333, 336-37 (1st Cir.1989). The maximum term for a crime involving 717.1 grams of cocaine is forty years--well over the 10-year maximum needed to trigger the presumption.[3] See 21 U.S.C. § 841(b)(1)(B).
 
 
 14
 While prediction of a lesser sentence based on a lesser quantity of the drug may affect the weight assigned to the presumption, see Moss, 887 F.2d at 337, we see no evidentiary basis for such a prediction. Rather, there was very strong circumstantial evidence linking Gianquitto personally to multiple cocaine transactions, and implicating him as a major player in the whole operation.
 
 
 15
 (2) There is no basis for appellant's Sixth Amendment challenge to the court's reliance on the DEA agent's testimony that a drug ledger found in appellant's home reflected transactions in excess of five kilograms. The agent testified from present memory as to his own review of the contents of the ledger. The testimony was taken in the presence of appellant and his counsel; there was an opportunity to cross-examine; and counsel in fact cross-examined the agent extensively about many issues. No more was required. See United States v. Acevedo-Ramos, 755 F.2d 203, 207 (1st Cir.1985) (reliable hearsay is admissible in bail hearings).
 
 
 16
 The record flatly contradicts appellant's claim that the judge considered additional information about the ledger, which was produced at a continuation of the hearing against the other defendants after the close of evidence on the motion against appellant. In any event, appellant's defense team bypassed an opportunity offered by the judge to seek to reopen appellant's hearing if there was any perceived prejudice in the use of the ledger against the other defendants.
 
 
 17
 For the reasons stated, the order imposing detention pending trial is affirmed.
 
 
 
 [1]
 Although Gianquitto immediately noticed this appeal, perfection of it was delayed by a combination of circumstances which included a filing mistake in the district court clerk's office and a substitution of attorneys by Gianquitto
 
 
 [2]
 A later-returned indictment provides hindsight support for the parties' probable cause stipulation. The indictment charges Gianquitto in five counts with possession and distribution of cocaine, as well as conspiracy to distribute more than five kilograms of the drug
 
 
 [3]
 The argument is also infirm because it (1) ignores the effect of defendant's stipulation to probable cause, and (2) assumes that "direct" evidence and/or evidence of "personal" involvement in specific transactions is needed to trigger the presumption