MESSANO, P.J.A.D.
*1067 *57 This appeal presents an issue of first impression under the Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to 2A:162-26 *58 (the CJRA). N.J.S.A. 2A:162-19(e)(1) provides that at a pretrial detention hearing, a "defendant has the right to be represented by counsel, and ... shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." (Emphasis added). We consider whether this provision of the CJRA permits a defendant to subpoena "adverse witnesses," in this case, police officers, to testify at a pretrial detention hearing.
I.
Defendant Dakevis A. Stewart was arrested by members of the Penns Grove Police Department and charged with possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) ; unlawful possession of a firearm, N.J.S.A. 2C:39-5(b) ; possession of a firearm by certain persons not to possess a weapon, N.J.S.A. 2C:39-7(b)(1) ; tampering with physical evidence, N.J.S.A. 2C:28-6(1) ; and resisting arrest by flight, N.J.S.A. 2C:29-2(a)(1).[1] At the time, defendant was subject to an order of pre-trial release with certain non-monetary conditions that was entered following a June arrest for possession of a controlled dangerous substance and other offenses.
The following day, the State of New Jersey moved for defendant's pre-trial detention on the new arrest, as well as revocation of his release on the June arrest. At the pretrial detention hearing, the State moved into evidence the complaint-warrant; the Public Safety Assessment (PSA) prepared by Pretrial Services; a Preliminary Law Enforcement Incident Report (PLEIR) and affidavit of probable cause prepared by Patrolman Joseph Johnson; the pretrial release order from the prior arrest; and a pretrial monitoring violation report.
Pretrial Services assigned defendant PSA scores of five for both risk of failure to appear (FTA) and new criminal activity (NCA).
*59 There was no New Violent Criminal Activity (NCVA) flag. Pretrial Services recommended against defendant's release.[2]
The affidavit of probable cause stated that on September 20, 2017, Johnson responded to a report of gunshots in the area of the Penn Village Apartments. As the officer turned onto a street near the apartment complex, he saw a vehicle, coming toward him at high speed. Johnson intercepted the vehicle and its driver, later identified as defendant, exited and ran through a nearby cemetery. Other officers arrived and Johnson advised them of his observations and gave a description of the driver. These officers gave chase and saw defendant throw a handgun to the ground. The gun was retrieved by police, who later learned that defendant was prohibited from possessing a handgun because of his criminal history.
The PLEIR supplied some additional information. Patrolman Tim Haslett "personally observed the offense"; police recorded the statement of a witness on a body camera; defendant appeared to be under the influence of drugs or alcohol at the time and was injured by a police dog *1068 after he tried to flee; and a member of the public provided information to the 911 call center. The State advised the judge it would proceed by proffer and argued the evidence established probable cause that defendant had committed the charged offenses.
Defense counsel had served Johnson, who was present, with a subpoena to testify. Counsel argued that N.J.S.A. 2A:162-19(e)(1) permitted defendant to call witnesses at a pretrial detention hearing. He also intended to subpoena four other police officers identified in the arrest report as having supplied information to Johnson for the affidavit.[3] Specifically stating that the hearing was *60 "at the probable cause stage," the judge preliminarily ruled that defendant could call Johnson and the other officers on the issue of probable cause.
Following a short recess, the State argued that allowing defendant to call the State's witnesses to challenge the factual statements in the affidavit would convert the detention hearing into a "mini-trial." It requested a stay of the proceedings. The judge indicated that she had not realized Johnson was the affiant and concluded that defendant had not proffered any information to challenge Johnson's statements in the affidavit. The judge expressed concern that permitting defendant to attack the credibility of Johnson's statements by calling him as a witness would result in a "mini-trial." However, the judge concluded defendant could challenge probable cause by calling other witnesses who allegedly observed defendant commit the offenses, such as the other four police officers, and ruled defendant could subpoena the officers to testify as to probable cause.[4]
The judge entered an order permitting defendant "to subpoena the [police] officers at the scene of the incident to testify at the [d]etention [h]earing." She stayed the hearing so the State could seek emergent appellate review. We granted the State's motion for leave to appeal, stayed further proceedings in the Law Division and ordered defendant's continued detention pending our decision. Thereafter, we granted motions filed by the Office of the Attorney General (AG), the Office of the Public Defender (OPD) and the American Civil Liberties Union (ACLU) to appear as amici curiae.
*61 II.
Before us, the State argues that despite the plain language of N.J.S.A. 2A:162-19(e)(1), a defendant does not have an absolute right to call potential State's witnesses, referred to as "adverse witnesses," at a pretrial detention hearing. It asserts that we should follow the majority of federal courts, which hold that a defendant may call adverse witnesses at the discretion of the trial court, but only after proffering how the witnesses' testimony will be favorable and material. The State contends this approach preserves defendants' constitutional due process rights and statutory right to "present witnesses" at detention hearings, N.J.S.A. 2A:162-19(e)(1), while preventing those hearings from becoming *1069 time-consuming "mini-trials." It also argues that allowing a defendant to call adverse witnesses without limitation, while the State's investigation may be incomplete, "unfairly gives the defendant a record that could potentially be used against [a] witness" at trial. It additionally argues that requiring a proffer from a defendant is "necessary to prevent potential harassment and intimidation of victims and witnesses" soon after a crime is committed.
The AG generally agrees, and asserts a defendant should be permitted to call adverse witnesses only if he or she can by proffer "articulate a good-faith basis for believing that the witness will testify favorably ... on a critical issue related to pretrial detention."
Defendant and the OPD counter by arguing that the plain language of N.J.S.A. 2A:162-19(e)(1) permits the accused to call witnesses at a pretrial detention hearing without limitation. Defendant asserts that we should adopt the holdings in a different line of federal cases which generally grant judges broad discretion in managing detention hearings and do not require a proffer before a defendant presents any witness. Defendant contends N.J.S.A. 2A:162-19(e)(1) provides an unfettered ability to present any witness, "so long as the integrity of the hearing is maintained and the scope of the testimony confined to relevant issues." OPD agrees that judges' discretionary "gatekeeping" powers are sufficient *62 to ensure that a detention hearing will not become a mini-trial or discovery expedition.
The ACLU echoes those arguments but goes further. It contends that our courts should always allow defendants to call any witness, adverse or otherwise, unless the State demonstrates a potential harm to a given witness that outweighs the value of that witness's testimony.
The Court has already comprehensively addressed the history and policy supporting the CJRA in State v. Ingram, 230 N.J. 190, 165 A.3d 797 (2017), and State v. Robinson, 229 N.J. 44, 160 A.3d 1 (2017), and we draw upon those decisions for guidance in this case as we consider some of the statute's terms.
N.J.S.A. 2A:162-19(e)(2) provides that at a pretrial detention hearing, the State must establish probable cause that the defendant committed the charged offense whenever an indictment has not yet been returned. If a defendant is not charged with certain specific crimes enumerated in N.J.S.A. 2A:162-19(b), to which a presumption of detention applies, the State must additionally demonstrate by clear and convincing evidence that there is a "serious risk" the defendant will not appear in court as required, will pose a danger to any person or the community, or will obstruct or attempt to obstruct justice. N.J.S.A. 2A:162-19(a)(7). As noted, N.J.S.A. 2A:162-19(e)(1) states that at a pretrial detention hearing, the defendant "shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." (Emphasis added). The rules of evidence do not apply at a detention hearing. Ibid.
In Ingram, the Court addressed whether by providing defendants with the right of cross-examination, the CJRA necessarily implied the State must produce a witness at the detention hearing, rather than proceed by proffer. Although N.J.S.A. 2A:162-19(e)(1) was silent on the subject, the Court concluded that "neither the statute's plain language nor principles of due process" require the State to present witnesses at every detention hearing.
*63 230 N.J. at 194, 165 A.3d 797. The Court found that "a pretrial detention hearing at which *1070 the State must demonstrate probable cause is not a final adjudication of contested facts or the merits of a charge." Ibid. It also concluded that to require the State to present live witnesses at every detention hearing would "impose significant additional fiscal and administrative burdens on the court system, law enforcement officers, the prosecution, and public defenders." Id. at 212, 165 A.3d 797. See also Robinson, 229 N.J. at 68-69, 160 A.3d 1 (at a detention hearing, "the focus is not on guilt, and the hearing should not turn into a mini-trial").
As the Court has noted, when the Legislature enacted the CJRA, it consciously chose to follow in many respects the federal Bail Reform Act of 1984 (the BRA), 18 U.S.C.A. §§ 3141 to 3156, and the District of Columbia's statutory scheme for pretrial detention, D.C. Code. §§ 23-1321 to - 1333 (the D.C. Code). Ingram, 230 N.J. at 205, 165 A.3d 797 ; Robinson, 229 N.J. at 56, 160 A.3d 1. In language identical to N.J.S.A. 2A:162-19(e)(1), the BRA provides that a defendant shall be afforded an opportunity to testify, present witnesses, cross-examine appearing witnesses, and present information by proffer or otherwise at a pretrial detention hearing. 18 U.S.C. § 3142(f)(2) ; see also D.C. Code. § 23-1322(d)(4) (same).
Federal courts have adopted somewhat different approaches to whether a defendant may call an adverse witness at the detention hearing. A majority of federal courts have adopted the rationale first set forth in United States v. Edwards, 430 A.2d 1321, 1337-39 (D.C. 1981), where the court interpreted the D.C. Code, a forerunner of, and model for, the BRA. Ingram, 230 N.J. at 209-10, 165 A.3d 797.
In Edwards, the court found the D.C. Code provided a defendant with "only a conditional right to call adverse witnesses." Id. at 1334. It concluded that before permitting a defendant to subpoena an adverse witness, a trial court "may require" a proffer "regarding the manner in which [that] witness' testimony will tend to negate substantial probability that the accused committed the *64 charged offense." Id. at 1338. The court stated that because it had also held that the government could proceed by proffer, "cross-examination for the limited purpose of impeaching the witness' credibility is an insufficient reason to compel a witness' presence." Ibid.
In limiting a defendant's ability to call adverse witnesses at a detention hearing, the Edwards court stressed that the government has an "obvious interest in not conducting a full-blown criminal proceeding twice, once for pretrial detention and a second time for the trial on the charges." Id. at 1337. It also stated that defendants and the government share a mutual interest in holding the hearing soon after arrest, and found this "necessarily precludes the full-scale preparation and investigation that is commensurate with a criminal trial." Ibid. Finally, the court noted that the government has legitimate interests in "preventing premature discovery" and "protecting the emotional and physical well-being of its witnesses," particularly a complaining witness. Id. at 1338. As a result, it held that a "simplified hearing" including a "reasonable limitation" on the defendant's ability to call witnesses was appropriate. Id. at 1337.
Many federal courts interpreting the BRA have followed the Edwards' court's reasoning and held that a magistrate need not permit a defendant to subpoena the government's witnesses at a pretrial detention hearing without the defendant first making a proffer demonstrating how the witness' testimony will be helpful. In United States v. Winsor, 785 F.2d 755, 756 (9th Cir. 1986), after the government proceeded by proffer at the detention hearing, the defendant argued he should be permitted *1071 to examine the government witnesses who were involved in the investigation and his arrest "to demonstrate that he was arrested without probable cause." The Ninth Circuit found the court was not required to allow him to do so without first making a showing "that the government's proffered information was incorrect." Id. at 757.
Similarly, in United States v. Accetturo, 783 F.2d 382, 388-89 (3rd Cir. 1986), the Third Circuit found the trial court did not err *65 by refusing to compel the appearance of a witness upon whom the government had relied in creating the documentary evidence it submitted at the detention hearing. The court found there was "no reason to believe" that the witness "would give evidence favorable to [the defendants] or would retract information harmful to them." Id. at 388. The court "acknowledge[d] the difficulty faced by defendants seeking to discredit government evidence" when the government has chosen to proceed by proffer, but found "the need for speed in reaching pretrial detention determinations justifies the use of procedures less demanding than those applicable to a 'full-blown trial.' " Id. at 390 (quoting United States v. Delker, 757 F.2d 1390, 1398 (3rd Cir. 1985) ).
In United States v. Cabrera-Ortigoza, 196 F.R.D. 571, 575 (S.D. Cal. 2000), the district court stated that "absent something credible to challenge the reliability or the correctness of the government's proffer, the court need not compel live witnesses to testify." Citing Winsor, the court held that without a proffer from the defendant that the government's proffered evidence is inaccurate, a judge is not required to allow the examination of investigators and police officers. Id. at 574.
Likewise, in United States v. Sanchez, 457 F.Supp.2d 90, 93 (D. Mass. 2006), the district court stated that Edwards offered "the best analysis" of when a judge should permit defendants to subpoena government witnesses. It found a defendant "must give the court some basis for believing" an adverse witness the defendant wishes to subpoena will "produce testimony favorable to [him or her] or that there is some reason to question the reliability of hearsay evidence proffered by the government." Ibid. The court concluded the defendant had not done so, and that his apparent purpose in subpoenaing a government witness was simply to use the pretrial detention hearing as a discovery tool. Id. at 93-94.
A smaller number of federal courts agree with Edwards that a defendant has only a conditional right to call adverse witnesses at a pretrial detention hearing, but following the Eleventh Circuit's decision in *66 United States v. Gaviria, 828 F.2d 667, 670 (11th Cir. 1987), do not impose Edwards' procedural requirement that the defendant need make any proffer beforehand. Ibid. The Gaviria court held, "the judicial officer presiding at the detention hearing is vested with the discretion whether to allow defense counsel to call an adverse witness with or without an initial proffer of the expected benefit of the witness' testimony." Ibid.
Other earlier cases seemingly agree that the judge's inherent ability to control the conduct of the hearing is a sufficient deterrent to abuse. In Delker, 757 F.2d at 1398, the Third Circuit found a district court "may have some discretion to curtail cross-examination based upon such criteria as relevancy, or to prevent a pretrial hearing from becoming a full-blown trial." Similarly, in United States v. Acevedo-Ramos, 755 F.2d 203, 207-8 (1st Cir. 1985), the court stated that a judge
possesses adequate power to reconcile the competing demands of speed and of reliability, by selectively insisting upon the production of the underlying evidence *1072 or evidentiary sources where their accuracy is in question. Through sensible exercise of this power of selection, the judicial officer can make meaningful defendant's right to cross-examine without unnecessarily transforming the bail hearing into a full-fledged trial or defendant's discovery expedition.
Although these cases specifically reference cross-examination, rather than a defendant's ability to compel the appearance of an adverse witness, they reflect the Gaviria court's conclusion that a judge retains sufficient power to control the admission of evidence at a pretrial detention hearing without imposing specific procedural prerequisites upon a defendant.
With this background, we consider the particular facts of this case.[5]
*67 III.
Initially, we reject the position urged by the ACLU that a defendant may call any witness, whether under compulsion of subpoena or otherwise, unless the State can affirmatively demonstrate that potential harm to the witness outweighs the value of the witness's testimony. That interpretation of the CJRA runs counter to all the federal cases interpreting the BRA, as well as the generally accepted axiom that trial judges have "wide discretion in exercising control over their courtrooms," D.A. v. R.C., 438 N.J.Super. 431, 461, 105 A.3d 1103 (App. Div. 2014) (quoting N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J.Super. 245, 264, 800 A.2d 132 (App. Div. 2002) ), and perform a necessary "gatekeeper role" regarding testimony adduced at any proceeding. State v. Nesbitt, 185 N.J. 504, 514, 888 A.2d 472 (2006). Even when constitutional rights are at stake, requiring a defendant to make a proffer before proceeding is hardly alien to our case law. See, e.g., State v. Henderson, 208 N.J. 208, 291, 27 A.3d 872 (2011) (noting defendant's proffer of statements made by administrator of an identification procedure may compel Wade [6] hearing); State v. Cotto, 182 N.J. 316, 332-34, 865 A.2d 660 (2005) (considering proffered evidence of third-party guilt and concluding exclusion did not violate the defendant's Sixth Amendment rights); State v. Kelly, 97 N.J. 178, 197-98, 478 A.2d 364 (1984) (requiring consideration of defense proffer regarding expert testimony on battered-woman's syndrome before considering relevancy to a claim of self-defense).
*68 We also reject defendant's and OPD's position that the CJRA permits a defendant to subpoena or otherwise produce adverse witnesses at the detention hearing without any proffer beforehand, constrained only by the judge's inherent *1073 ability, as outlined above, to control the proceedings and limit interrogation as necessary. The probable cause determination has historically been made without any constitutional or statutory requirement that a defendant be entitled to present any evidence, much less compel the presence and testimony of adverse witnesses. Ingram, 449 N.J.Super. at 103-06, 155 A.3d 597. It would be ironic, at the least, for the State to proceed by proffer, as the Court allowed in Ingram, and still permit a defendant to compel the appearance of the author of the proffered documents. Requiring police witnesses to appear, without any showing as to the relevancy of their testimony regarding the probable cause determination, places enormous burdens on local resources and the courts. See Ingram, 230 N.J. at 212, 165 A.3d 797 (describing these concerns).
Instead, we believe the holdings in Edwards, Winsor and Accetturo strike the proper balance by according a defendant the opportunity to "present [adverse] witnesses," while at the same time providing an expeditious determination regarding probable cause. Before permitting a defendant to subpoena adverse witnesses to appear at the detention hearing, the judge should require a proffer as to the witness' likely testimony, and how that testimony will negate a finding that there is a "substantial probability that the accused committed the charged offense." Edwards, 430 A.2d at 1338.
Here, the judge never asked defendant to make such a proffer, but, instead, entered an order permitting defendant to subpoena all officers "present at the scene of the incident." Defendant has yet to proffer the expected relevancy of this testimony, much less how it might negate a finding of probable cause. Compelling the appearance of four or five police officers to challenge a finding of probable cause suggests that defendant seeks only to impeach statements made by Johnson in his affidavit *69 of probable cause, engage in further discovery, or lay the groundwork for potential inconsistencies between testimony given at the detention hearing and a later trial. See Edwards, 430 A.2d at 1338 (impeachment and "premature discovery" are insufficient reasons to compel appearance of adverse witnesses). None of these possibilities justifies defendant's efforts, given the limited focus of the detention hearing. See Robinson, 229 N.J. at 68, 160 A.3d 1 ("[T]he administration of justice calls for fair and efficient proceedings. In the case of a detention application, the focus is not on guilt, and the hearing should not turn into a mini-trial.").
We therefore reverse the order under review and remand the matter to the Law Division for continuation of the detention hearing in this case. If defendant intends to call any adverse witnesses to rebut the State's evidence of probable cause, the judge must first ask for a proffer regarding the witness' anticipated testimony and its relevancy to the issue of probable cause, and how the anticipated testimony negates the State's evidence already adduced at the hearing in this regard.
IV.
Because there was no probable cause determination reached in this case, the detention hearing never proceeded to the second stage. See id. at 69, 160 A.3d 1 (describing the second stage of the detention hearing, i.e., where a "trial judge must assess the risk of danger, flight, and obstruction"). Although the issue is not squarely before us, at oral argument the parties posited different views on whether a defendant must also make a proffer before producing an adverse witness to challenge the State's evidence supporting detention.
*1074 Because the issue has significant ramifications for the hundreds of detention hearings occurring continually in our criminal courts, and in particular for guidance in this case on remand, we choose to address the question.
The CJRA "authorizes the court to order pretrial detention if it finds by clear and convincing evidence that no conditions of release would reasonably assure a defendant's appearance in *70 court, the safety of the community, and the integrity of the criminal justice process." Id. at 57, 160 A.3d 1 (citing N.J.S.A. 2A:162-18(a) ). N.J.S.A. 2A:162-20 contains a number of factors the court "may take into account" in reaching its decision, including, in particular, "[t]he nature and circumstances of the offense charged" and "[t]he weight of the evidence against the eligible defendant." N.J.S.A. 2A:162-20(a) and (b).
As a result, putting aside the question of probable cause, the ACLU in particular asserted that a defendant at a pretrial detention hearing may compel the appearance of an adverse witness to rebut the State's evidence regarding the nature and circumstances of the offense or the strength of the State's case. The State and the AG do not categorically reject the argument; however, they urge us to apply the same rationale during this second phase of the detention hearing as we have applied to the probable cause phase. In other words, they argue that prior to compelling the appearance of an adverse witness, a defendant must make a proffer demonstrating how the anticipated testimony would rebut or diminish the otherwise clear and convincing evidence the State must produce to warrant detention. We agree and reach this conclusion for at least two reasons.
First under the BRA, federal courts may consider the nature and circumstances of the offense or the strength of the government's case when deciding whether to detain a defendant. See 18 U.S.C. 3142(g)(1) and (2). As already noted, ante at 1068 n.4, in the line of federal decisions we choose to follow, the detention hearing was not about whether the government had demonstrated probable cause, but rather whether detention was warranted. In Sanchez, for example, the defendant specifically sought to call a police officer as a witness regarding "the weight of the government's evidence of criminality." 457 F.Supp.2d at 92. The court, however, denied the request, citing Edwards as providing the "best analysis of what should inform the ... judge's exercise of ... discretion as to whether to permit defendant's counsel to subpoena the Government's witnesses on the question of the 'weight of the evidence.' "
*71 Id. at 93. See also United States v. Martir, 782 F.2d 1141, 1145 (2nd Cir. 1986) (considering pretrial detention hearing where "flight presumption," 18 U.S.C. § 3142(e), was at issue, and concluding "[i]n light of the Act's mandate for informality and the need for speed at a point where neither the defense nor the prosecution is likely to have marshalled all its proof, the government as well as the defendant should usually be able to proceed by some type of proffer where risk of flight is at issue").
Second, in Robinson, 229 N.J. at 69, 160 A.3d 1, the Court adopted a comprehensive Court Rule that addressed the State's discovery obligations at a detention hearing, "keyed to both" "a determination of probable cause and an assessment of the risk of danger, flight, and obstruction, which may include consideration of the nature and circumstances of the offense and the weight of the evidence." As a result, a defendant in New Jersey is provided with a significant amount of information about the State's case before the hearing. Id. at 69-71, 160 A.3d 1. The CJRA permits a *1075 defendant to proceed by proffer at the detention hearing, N.J.S.A. 2A:162-19(e)(1). That means a defendant need not subpoena police officers, victims or State's witnesses to provide the judge with a substantial amount of evidence that goes to the nature and circumstances of the offense, the weight of the evidence and any other factor that might impact the judge's detention decision.
We wish to make clear that requiring a defendant to make a proffer before an adverse witness is produced at a detention hearing does not limit the judge's discretionary authority to grant such a request. As the Court stated in Ingram, 230 N.J. at 213, 165 A.3d 797, the judge retains significant discretion to compel the production of a witness when the State's proffer is inadequate; we have no doubt the judge retains the same discretion to permit the production of an adverse witness after considering a defense proffer demonstrating the particular relevance of the anticipated testimony to either the probable cause determination or whether detention is warranted.
*72 Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

The statutory citations for some of the charges in the complaint-warrant were incorrect.

The PSA recommendation also provided that the "charges include non-Graves weapons/gun/explosives." We are unsure what that reference means, because the State alleged the firearm was fully operational, and defendant was subject to mandatory minimum sentencing pursuant to N.J.S.A. 2C:43-6(c).

The report is not in the record and the four other officers have not been identified.

As noted, the State also sought detention because defendant violated the terms of the earlier pretrial release order, which required defendant to refrain from committing another offense. See N.J.S.A. 2A:162-24 (permitting revocation upon a finding of probable cause that defendant committed a "new crime while on release"); see also State v. White, 452 N.J.Super. 417, ----, 175 A.3d 178 (App. Div. 2017) (discussing generally the revocation hearing and the State's burden of proof). In this case, the hearing focused only on the probable cause determination, a necessary prerequisite to consideration of the State's additional basis for detention.

Unlike our CJRA, the BRA requires the government to establish probable cause at pretrial detention hearings only if a defendant has not yet been indicted and is charged with certain crimes to which a rebuttable presumption of detention applies. Compare 18 U.S.C. § 3142(e)(3), with N.J.S.A. 2A:162-19(e)(2). As a result, the issue in most of the federal cases cited was not whether the evidence supported a finding of probable cause, but rather whether detention was appropriate.
Nevertheless, the Court in Ingram squarely addressed this difference and concluded it was insignificant to its analysis. The Court noted that "in the seminal Edwards case, the defendant had been charged but not indicted for armed rape, which formed the basis for the government's detention application." Ingram, 230 N.J. at 210, 165 A.3d 797 (citing Edwards, 430 A.2d at 1324 ). Despite this difference in the statutory schemes, the Court "dr[ew] guidance from federal precedent that interpreted a law similar to the CJRA."Id. at 211, 165 A.3d 797 (citing State v. Ingram, 449 N.J.Super. 94, 108-13, 155 A.3d 597 (App. Div. 2017) ).

United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).